UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
APR 0 1 2009
MICHAEL J. ROEMER, CLERK
WESTERN DISTRICT OF NY

RALPH BUCK PHILLIPS,

        Plaintiff,

    -v-

GLEN GOORD, RICHARD ROY, ERIK KRISS,
M. KIRKPATRICT, R. MARINACCIO, K. LEBEL,
T. DOYLE, R. HENDERSON, J. MEWELL,
CHRISTOPHER MOSS, RICHARD RICH,
ANN "DOE," JOSEPH GERACE, J.S. HOVER,
L. GREATHOUSE and C. DROWN,

        Defendants.

08-CV-0957A(F)
**ORDER**

## INTRODUCTION

Plaintiff, Ralph Buck Phillips, an inmate of the Clinton
Correctional Facility, has filed this *pro se* action seeking relief
under 42 U.S.C. § 1983 (Docket No. 1) and has both requested
permission to proceed *in forma pauperis* and filed a signed
Authorization (Docket No. 3 and 6). Plaintiff also seeks the
appointment of counsel. (Docket No. 4). Plaintiff's complaint
alleges various violations of his constitutional rights for conduct
that occurred both prior to and after his much-publicized escape
from the Erie County Correctional Facility ("ECCF"), protracted
search during which three New York State Police Officers were shot,
one fatally,[1] capture and detention prior to and after his multiple
pleas of guilty to various offenses related to the escape and

---

[1]Plaintiff pled guilty to charges relating to these shootings.

shootings. Among other things, plaintiff alleges that a social worker at the "Buffalo Halfway House" retaliated against him by filing a false report which led to the revocation of his parole and escape from ECCF; that upon his capture and arrest the New York State Police Investigator who questioned him lied to him about charges being lodged against his daughter and her mother to coerce him to plead guilty; that he was placed in administrative segregation at the Chemung and Chautauqua County Jails without due process; that his detention in administrative segregation was cruel and unusual[2] because he was provided with only a mat upon which to sleep, no clothes, no recreation and non-contact visits only; that upon his transfer to the Elmira Correctional Facility he was assaulted by correctional officers; and that following the assault the correctional officers involved in the assault filed false

---

[2]The government may subject a pre-trial detainee to "restrictions inherent in confinement so long as the resulting conditions do not 'amount to punishment of the detainee.'" Shine v. Hofman, 548 F.Supp.2d 112, 119 (D.Vt.2008) (quoting Bell v. Wolfish, 441 U.S. 520, 536 (1979)). Plaintiff's conditions of confinement claims as a pre-trial detainee fall within the purview of the Fourteenth Amendment and substantive due process, as opposed to the Eighth Amendment that applies to his cruel and unusual punishment claims after his conviction. See Benjamin v. Fraser, 343 F.3d 35, 49-50 (2d Cir. 2003). As noted below, see Discussion, at 3-4, infra, plaintiff's allegations as to this claim, like others, are at least sufficiently pled to survive screening under 28 U.S.C. § § 1915(e) and 1915A. Not all claims, however, are sufficiently pled and will be dismissed either with or without an opportunity to be amended.

Additionally, some recent Second Circuit case law "suggests that a federal pre-trial detainee ... has a liberty interest in not being placed in close custody for an extended period of time." Shine, 548 F.Supp.2d at 118 (citing Iqbal v. Hasty, 490 F.3d 143, 163 (2d Cir. 2007), cert. granted. sub nom. Ashcroft v. Iqbal, 128 S.Ct. 2931 (June 16 ,2008)). Thus, to the extent that plaintiff alleges that he was placed in administrative segregation at the Chemung and Chauatauqua County Jails without due process, Complaint, ¶ ¶ 20-23, 56, 60, that claim too may proceed at this screening stage of the litigation.

misbehavior reports and testified falsely against him which led to a finding of guilt at a Tier III Superintendent's Hearing that was later overturned during an administrative appeal.

For the reasons discussed below, plaintiff's request to proceed as a poor person is granted, his motion for the appointment of counsel is denied without prejudice,[3] several of his claims are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, and unless plaintiff files an amended complaint as directed below, some of the remaining claims will be dismissed with prejudice pursuant to § § 1915(e)(2)(B) and 1915A.[4]

## DISCUSSION

Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to this action, plaintiff is granted permission to proceed *in forma pauperis*. Section 1915(e)(2)(B) of 28 U.S.C. provides that the Court shall dismiss a case in which *in forma pauperis* status has

---

[3]There is insufficient information before the Court at this time to make the necessary assessment of plaintiff's claims under the standards promulgated by <u>Hendricks v. Coughlin</u>, 114 F.3d 390, 392 (2d Cir. 1997), and <u>Hodge v. Police Officers</u>, 802 F.2d 58 (2d Cir. 1986), as issue has yet to be joined. Therefore plaintiff's motion for appointment of counsel is denied without prejudice at this time. It is the plaintiff's responsibility to retain an attorney or press forward with this lawsuit *pro se.* 28 U.S.C. § 1654.

[4]The Court will address below only those specific claims that are either being dismissed without opportunity to amend or dismissed but with opportunity to amend. The claims not addressed specifically below may proceed at this time and service will be directed with respect to them when plaintiff files his amended complaint and it is reviewed pursuant to 28 U.S.C. § § 1915(e)(2)(B) and 1915A. If plaintiff does not file an amended complaint, as directed, by May 20, 2009, the claims that are proceeding will be served on the remaining defendants.

been granted if the Court determines that the action (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. In addition, 28 U.S.C. § 1915A(a) requires the Court to conduct an initial screening of "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.*, regardless of whether or not the inmate has sought *in forma pauperis* status under 28 U.S.C. § 1915. Sections 1915 and 1915A "provide an efficient means by which a court can screen for and dismiss legally insufficient claims." Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007) (citing Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004)).

In evaluating the complaint, the Court must accept as true all of the factual allegations and must draw all inferences in plaintiff's favor. *See* Larkin v. Savage, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); King v. Simpson, 189 F.3d 284, 287 (2d Cir. 1999). Moreover, "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations." McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004); *and see* Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998). Nevertheless, even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. Wynder v. McMahon, 360 F.3d 73 (2d Cir. 2004).

4

"Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Erickson v. Pardus, – U.S. –, 127 S.Ct. 2197, 2200 (2007) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. –, –, 127 S.Ct. 1955, 1964 (2007)) (internal quotation marks and citation omitted); see also ATSI Comms., Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir.2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to 'raise a right to relief above the speculative level.' " (quoting Twombly, 127 S.Ct. at 1965)); Boykin v. Keycorp, 521 F.3d 202, 213 (2d Cir 2008) (discussing pleading standard in pro se cases after Twombly). Generally, the Court will afford a pro se plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." Abbas, 480 F.3d at 639 (quoting Gomez v. USAA Federal Savings Bank, 171 F.3d 794, 796 (2d Cir. 1999) (per curiam )).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. "To [state] a claim under 42 U.S.C. § 1983, a plaintiff must 'show that [an] official, acting under color of state law, caused the deprivation of a federal right.'" Johnson v. Goord, 445 F.3d 532 (2d Cir. 2006) (quoting Coon v. Town of Springfield, Vt., 404 F.3d 683, 686 (2d Cir. 2005)(internal citations omitted)). In other

words, "the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." <u>Whalen v. County of Fulton</u>, 126 F.3d 400, 405 (2d. Cir. 1997) (citing <u>Eagleston v. Guido</u>, 41 F.3d 865, 875-76 (2d Cir.1994))

Based on its evaluation of the complaint, the Court finds that several of plaintiff's claims (Docket No. 1, Complaint, First thru Third Claim, ¶ ¶ 4-15, 53-55, Seventh Claim, ¶ 59; Tenth Claim, ¶ 62; Sixteenth Claim, ¶ 68; and Eighteenth Claim, ¶ 70) must be dismissed with prejudice pursuant to 28 U.S.C. § § 1915(e)(2)(B)(ii) and 1915A(b) because they fail to state a claim upon which relief may be granted. In addition, the Court finds that two of plaintiff's claims must be dismissed unless he files an amended complaint as directed below (Complaint, Eighth Claim, ¶ 60; and Seventeenth Claim, ¶ ¶ 47-51, 69), and that the remaining claims may proceed, at this stage in the litigation, pursuant to the standards for reviewing *pro se* complaints set forth above (Complaint, Fourth thru Sixth Claim, ¶ ¶ 20-23, 56-58; Ninth Claim, ¶ 61; and Eleventh thru Sixteenth Claims, ¶ ¶ 27-38, 46, 64-68).

**PLAINTIFF'S CLAIMS**

## A. Retaliation: First and Second Claims

The First and Second Claims set forth in the Complaint (Complaint, ¶ ¶ 4-15, 53-54), allege that in 2006, prior to his escape from ECCF, defendant Greathouse, a "social worker" at the Buffalo Halfway House, filed a false report with plaintiff's parole officer and testified falsely in a parole revocation hearing in retaliation for plaintiff rebuffing her sexual advances. Plaintiff claims that the report and subsequent parole revocation were the reasons he escaped from ECCF on April 2, 2006.

### 1. Acting Under of Color of State Law

Plaintiff alleges that Greathouse retaliated against him by filing a false report and provided false testimony because he had rebuffed her advances. The Court notes, initially, that the complaint makes no factual allegations that Greathouse, a social worker at the Buffalo Halfway House was acting under color of state law for purposes of 42 U.S.C. § 1983.

In order to recover in an action under § 1983, a plaintiff must show a deprivation of his constitutional or statutory rights by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Bryant v. Maffucci, 923 F.2d 979, 982-83 (2d Cir. 1991), cert. denied, 502 U.S. 849 (1991). In order to act under color of state law, a person must have exercised power "possessed by virtue of state law and made possible only because

7

the wrongdoer is clothed with the authority of state law." <u>Polk County v. Dodson</u>, 454 U.S. 312, 317-18 (1981) (quoting <u>United States v. Classic</u>, 313 U.S. 299, 326 (1941)). Similarly, as is the case in the context of the Fourteenth Amendment's state action requirement, a deprivation of a federal or constitutional right is actionable pursuant to § 1983 when the deprivation was caused "by the exercise of some right or privilege created by the State ... or by a person for whom the State is responsible." <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 937 (1982).

Because there are no allegations that the Buffalo Halfway House nor defendant Greathouse are "state actors" the complaint fails to state a claim upon which relief can be granted. The Buffalo Halfway House, Inc's website states that "[it was] incorporated in 1983, [and] was formerly known as BUILD's Halfway House, founded in 1974 by Eugene L. Pierce under the sponsorship of the BUILD organization. The halfway house is a not-for-profit agency ...." <<u>http://www.bufalowh.org/background.htm</u>>. This alone would lead one to conclude that the Buffalo Halfway House is a private organization, that is not subject to liability under § 1983. While generally the Court would provide plaintiff an opportunity to amend the complaint with respect to this issue, such an amendment would be futile because the claim of retaliation itself fails to state a claim upon which relief could be granted.

### 2. Retaliation

The gravaman of plaintiff's claim against Greathouse is that she falsely accused him of misconduct which led to his parole revocation. Falsely accusing an inmate of wrongdoing does not rise to the level of a constitutional violation, *see* Boddie v. Schneider, 105 F.3d 857, 862 (2d Cir. 1997); *see also* Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986) ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest"), *cert. denied*, 485 U.S. 982, 108 S. Ct. 1273 (1988). "There must be more, such as retaliation against the prisoner for exercising a constitutional right." Boddie, 105 F.3d at 862.

While plaintiff does allege that Greathouse retaliated against him, it is not alleged that this was as a result of the exercise of some constitutionally protected right. The allegation of retaliation for his rejection of sexual advances are simply too conclusory to state a claim, *see* Pauls v. Donovan, 3:04-CV-1525(RNC), 2008 WL 207697, at *2 (D.Conn., Jan. 22, 2008) (citing Yusuf v. Vassar Coll., 35 F.3d 709, 713 (2d Cir. 1994); Friedl v. City of New York, 210 F.3d 79, 85-86 (2d Cir. 2000)). Courts recognize that retaliation claims by prisoners are "prone to abuse" since prisoners can claim retaliation for every decision they dislike. Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995)

("Because we recognize both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated, we examine prisoner's claims of retaliation with skepticism and particular care") (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983)); *see also* Graham v. v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996). Thus, "[a] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone [because i]n such a case, the prisoner has no factual basis for the claim." Flaherty, *supra*. Simply alleging that Greathouse lodged a false report against him for his rejection of her sexual advances does not state a claim for relief.

Additionally, as noted, there is no allegation that the retaliation was done because of plaintiff's exercise of a constitutional right. *See* Mount Healthy School District v. Doyle, 429 U.S. 274, 287 (1977). To make out a § 1983 retaliation claim, a prisoner must show: (1) that he was engaged in constitutionally protected conduct; and (2) that the prison official's conduct was taken in retaliation for the prisoner's protected conduct. Graham, 89 F.3d at 75; *see also* Shine v. Hofman, 548 F.Supp.2d 112, 121 (D.Vt.2008) (applying the same standard to pre-trial detainee) (citing Morales v. Mackalm, 278 F.3d 126, 131 (2d Cir. 2002) (citations omitted)). Accordingly, for the reasons just set forth, the Court finds that plaintiff has not stated a plausible claim of

retaliation against Greathouse, *see* Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir.2007), and any attempt to amend said claim would be futile.

## B. Improper Police Questioning: Third Claim

Plaintiff alleges that upon his arrest he was initially questioned by defendant New York State Police Investigation J. Newell who lied to him about criminal charges being brought against plaintiff's daughter and her mother in order to elicit a confession. This claim must be dismissed because it is barred by the favorable termination rule of Heck v. Humprehy, 512 U.S. 477, 484 (1994).

The essence of plaintiff's claims is that he was the victim of false and deceptive interrogation which led to his confession and subsequent guilty pleas. Although plaintiff seeks damages for his claims, in fact the underlying basis of his claims is that his conviction was unlawful and he is therefore improperly being detained. The Supreme Court has held, however, that such a claim does not constitute a cognizable cause of action under § 1983.

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a

11

> federal court's issuance of a writ of habeas
> corpus, 28 U.S.C. § 2254. A claim for damages
> bearing that relationship to a conviction or
> sentence that has not been so invalidated is
> not cognizable under § 1983.

Heck v. Humphrey, 512 U.S. at 484. Because success on this claim would call into to question the validity of plaintiff's convictions and said convictions have not been overruled or found invalid in any way, this claim is bared and must be dismissed.

### C. Claim Against Court Appointed Counsel ("Public Advocate): Seventh Claim

Plaintiff alleges that his court appointed counsel in Chemung County, defendant Richard Rich, induced him to plead guilty and prejudiced his right to a fair trial. Because Rich is not a person acting under color of law--*i.e.*, a "state actor"--the claims against him must be dismissed with prejudice. It is well established that an attorney representing a client in a criminal proceeding, whether that attorney is a public defender, legal aid attorney or court-appointed counsel, is not acting under the color of state law. Polk County v. Dodson, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981). Alternatively, plaintiff's claims against Rich would be barred under the favorable termination of *Heck*, 512 U.S. at 484.

## D. Inadequate Medical Treatment Claim: Eighth Claim

Plaintiff alleges that "Ann Doe," a Nurse at the Chemung County Jail, denied him adequate medical treatment for chronic back pain. Separate apart from needing to identify whom this defendant is, the complaint fails to state a claim against her inasmuch as it fails to allege that she was deliberately indifferent to a serious medical need of plaintiff.[5] "Claims by pretrial detainees for denial of adequate medical care are examined under the Fourteenth Amendment's Due Process Clause, [not the Eighth Amendment's cruel and unusual punishment clause]," Peterec v. Kroeger, No. 08-CV-1626 (CS)(GAY), 2009 WL 320798, at *4 (citing Weyant v. Okst, 101 F.3d 845, 856 (2d Cir.1996)), but courts apply the same analysis to both claim. See, e.g., Cuocco v. Moritsugu, 222 F.3d 99, 106 (2d Cir. 2000) (noting that Second Circuit has often applied Eighth Amendment deliberate indifference test to pretrial detainees' claims under the Due Process Clause of the Fourteenth Amendment) (citation omitted).

A claim of inadequate medical care rises to the level of a constitutional violation only where the facts alleged show that defendant was deliberately indifferent to a plaintiff's serious

---

[5]Plaintiff's amended complaint regarding this claim should also conclude whatever information he have which would assist him and the Court in identifying Nurse Ann Doe--e.g., physical description, dates and times or shifts he was treated by Nurse Doe. If plaintiff's amended complaint sets forth a cognizable claim against Nurse Doe, the Court will need to then enlist the assist of Chemung County to attempt to identify whom Nurse Doe may be. See Valentin v. Dinkins, 121 F.3d 72, 75 (2d Cir. 1997).

13

medical needs. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104-05 (1976). "A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" <u>Harrison v. Barkley</u>, 219 F.3d 132, 136-137 (2d Cir. 2000) (quoting <u>Chance v. Armstrong</u>, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks omitted)). The Second Circuit pointed out that

> [medical] conditions ... vary in severity and ... a decision to leave a condition untreated will be constitutional or not depending on the facts of the particular case. Thus, a prisoner with a hang-nail has no constitutional right to treatment, but if prison officials deliberately ignore an infected gash, "the failure to provide appropriate treatment might well violate the Eighth Amendment."

<u>Id</u>. (quoting <u>Chance</u>, 143 F.3d at 702).

An isolated failure to provide medical treatment, without more, is generally not actionable unless "the surrounding circumstances suggest a degree of deliberateness, rather than inadvertence, in the failure to render meaningful treatment." <u>Gil v. Mooney</u>, 824 F.2d 192, 196 (2d Cir. 1987). Plaintiff has made no factual, non-conclusory allegations to suggest any degree of deliberateness on the part of Nurse Doe and therefore plaintiff has failed to allege a constitutional violation. Moreover, there are no factual allegations which support a claim that plaintiff's back pain was a serious medical condition; he simply alleges it was "chronic." Plaintiff's claim of inadequate medical care will

14

therefore be dismissed unless he files an amended complaint, as directed below, setting forth facts sufficient to state a claim of deliberate indifference against Nurse Doe. *See* <u>Abbas</u>, 480 F.3d at 639.

### E. False Reports and Testimony: Tenth, Sixteenth and Eighteenth Claims

The complaint's Tenth (defendant Hover) and Sixteenth (defendants Kirkpatrick, Marinaccio, Henderson, Lebel and Doyle) Claims allege that the defendants named in said claims filed false reports and testified falsely at related internal prison disciplinary hearings (Tenth Claim, ¶ 66; Sixteenth Claim, ¶ ¶ 46, 68). The Eighteenth Claim alleges that defendant Kriss, DOCS' Director of Public Information, provided false information to the media about plaintiff's prison disciplinary charges and proceedings. (Eighteenth Claim, ¶ 70). These claims must be dismissed because, as noted above, an inmate "has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." <u>Freeman</u>, 808 F.2d at 951. Thus, a claim for the filing of a false report or of providing false testimony by a correctional officer witness at a disciplinary hearing, in and of itself, does not state a cognizable claim that plaintiff's due process rights were violated. The only

15

constitutional violation that could occur in this situation is if plaintiff were not provided adequate due process in the proceeding, and then the claim is not based on the filing of a false report. While a false report or claim may be actionable if made in retaliation for an exercise of a first amendment right or other constitutionally protected activity, *See* <u>Franco v. Kelly</u>, 854 F.2d 584, 590 (2d Cir. 1988), claims of retaliation cannot be stated in conclusory terms and must be viewed skeptically by the courts. *See* <u>Flaherty</u>, 713 F.2d at 13.

The claims of retaliation herein are exactly that and there are no allegations that plaintiff engaged in constitutionally protected activity that led to the filing of the false reports. The claims against correctional officers Kirkpatrick, Marinaccio, Henderson, Lebel and Doyle (Complaint, ¶ ¶ ¶ 27-38, 46, 68) were allegedly made following an assault on plaintiff and claimed by plaintiff to have been filed to cover up for the assault. If there is a claim related to said report, it is related to whether plaintiff obtained due process during the Tier III Superintendent's Hearing, not for the filing of the report in-and-of itself. *See* <u>Discussion</u>, Section F, *infra.* Accordingly, the Tenth, Sixteenth and Eighteenth Claims, to the extent they allege claims relating to the making of false reports or claims and testifying falsely, are dismissed with prejudice.

**F.    Due   Process/Tier   III   Disciplinary   Hearing:**
**Seventeenth Claim**

The complaint alleges that following an assault by a number of
defendant correctional officers (Complaint, ¶ ¶ 27-38, 65-67), the
officers filed false misbehavior reports against him and at the
Tier III Superintendent's Hearing conducted as a result of the
charges, defendant Curtis Drown, the Hearing Officer, denied him
due process when he found plaintiff guilty of the charges filed
against him despite the false testimony provided by the
correctional officers.  The finding of guilt was later overturned
during an administrative appeal.  (Id., ¶ 51).  Plaintiff's
complaint fails to state a claim of a procedural due process
violation because it does not allege that plaintiff suffered an
"atypical and significant hardship" as a result of the disciplinary
hearing findings.

In Sandin v. Conner, 515 U.S. 472, 484 (1995), the Supreme
Court ruled that the Constitution did not require that restrictive
confinement within a prison be preceded by procedural due process
protections unless the confinement subjected the prisoner to
"atypical and significant hardship on the inmate in relation to the
ordinary incidents of prison life."   Sandin, 515 U.S. at 484.[6]

---

[6]Sandin compared inmates in the SHU for disciplinary purposes to inmates
in both the general inmate population and those in administrative segregation and
protective custody.  515 U.S. at 485-86.  Based on that comparison, the Court
held that the plaintiff's 30-day SHU punishment did not "work a major disruption
in his environment," id. at 486, and was "within the range of confinement to be
normally expected for one serving an indeterminate term of 30 years to life," id.
at 487.

"Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence impose by a court of law," 515 U.S. at 485, and it is only where the prisoner's conditions of disciplinary confinement become an atypical and significant hardship based on a liberty interest created by state law that federal due process standards must be met. *See* Miller v. Selsky, 111 F.3d 7, 9 (2d Cir. 1997) (holding that, while Sandin did not create a per se rule that disciplinary confinement may never implicate a liberty interest, where a prisoner fails to show the conditions to which he was subjected were "atypical and significant," summary judgment may nevertheless be granted).

Thus, in order to allege a cognizable due process claim, a § 1983 plaintiff must show that the "conditions of his [disciplinary] confinement ... were dramatically different from the basic conditions of [his] indeterminate sentence." Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996). In determining whether a prisoner has a liberty interest in remaining free from segregated confinement, district courts must make factual findings with respect to the alleged conditions of the confinement and the issue of its atypicality. *See, e.g.*, Welch v. Bartlett, 196 F.3d 389, 393-95 (2d Cir. 1999); Wright v. Coughlin, 132 F.3d 133, 137 (2d Cir. 1998); Brooks v. DiFasi, 112 F.3d 46, 49 (2d Cir. 1997); Miller, 111 F.3d at 8-9; Sealey v. Giltner, 116 F.3d 47, 52 (2d

Cir. 1997). Several factors should be considered when assessing whether the particular restrictions imposed on the prisoner are atypical and significant, including: (1) the effect of the segregation on the length of the plaintiff's prison confinement; (2) the extent to which the conditions at issue differ from other routine prison conditions; and (3) the duration of the prisoner's disciplinary confinement compared to the potential duration a prisoner may experience while in discretionary confinement. Wright, 132 F.3d at 136.

"[T]he duration and the frequency of such deprivations are highly relevant to whether the conditions of a plaintiff's confinement should be considered atypical." Welch, 196 F.3d at 393; see, e.g., Brooks, 112 F.3d at 47. Although the Second Circuit has not established a bright-line rule as to how lengthy a SHU confinement will be considered atypical and significant, see, e.g., Colon v. Howard, 215 F.3d 227, 230-31 (2d Cir. 2000), it has characterized segregative sentences of 125-288 days as "relatively long," and thus necessitating "specific articulation of ... factual findings" before a district court could properly term the confinement atypical or insignificant, Hynes v. Squillace, 143 F.3d 653, 658 (2d Cir. 1998) (describing the segregative confinements at issue in Miller, 111 F.3d at 9 (2d Cir. 1997) (125 days)); Brooks, 112 F.3d at 49 (180 days); and Wright, 132 F.3d at 136 (168 days in SHU, followed by 120 days in keeplock). In Colon, the Second

19

Circuit ruled that a prisoner's SHU confinement for 305 days was "'atypical' and a 'severe hardship' within the meaning of Sandin." 215 F.3d at 229. "The longest confinement in normal SHU conditions that [the Second Circuit] has ruled was not shown to meet the Sandin standard was 101 days," id. at 231 (emphasis added), and it has been suggested that even that length might qualify as atypical and severe, see Colon, 215 F.3d at 232 n. 5 ("We do not exclude the possibility that SHU confinement of less than 101 days could be shown on a record more fully developed than the one in Sealey to constitute an atypical and severe hardship under Sandin."). The Second Circuit has instructed the district courts to develop detailed factual records "in cases challenging SHU confinements of durations within the range bracketed by 101 days and 305 days." Colon, 215 F.3d at 232 (footnote omitted).

In this matter, the complaint neither alleges the length of his confinement in SHU nor any other facts that would establish that the disciplinary confinement was atypical and significant. Accordingly, this claim will be dismissed unless plaintiff files an amended complaint which sets forth allegations that would establish, if proven, that his disciplinary confinement was an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

## CONCLUSION

Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization, his request to proceed *in forma pauperis* is granted. For the reasons set forth above, the First, Second, Third, Seventh, Tenth, Sixteenth and Eighteenth Claims are dismissed with prejudice pursuant to 28 U.S.C. § § 1915(e) and 1915A. In addition, the Eighth and Seventeenth Claims must be dismissed pursuant to 28 U.S.C. § 1915(e) unless plaintiff files an amended complaint by **May 20, 2009**, in which he sufficiently pleads said claims as directed above and in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure. The remaining claims--Fourth, Fifth, Sixth, Ninth, Eleventh, Twelfth, Thirteenth, Fourteenth and Fifteenth--will be allowed to proceed at this time.

Plaintiff is advised that an amended complaint is intended to completely replace the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." International Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1977), *cert. denied sub nom.*, Vesco & Co., Inc. v. International Controls Corp., 434 U.S. 1014, 98 S. Ct. 730, 54 L. Ed.2d 758 (1978); *see also* Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore, plaintiff's amended complaint must include all of the allegations against each of the defendants against whom the case is going forward so that the amended complaint may stand alone

21

as the sole complaint in this action which the defendants must answer.

Plaintiff is forewarned that if he fails to file an amended complaint as directed, the Eighth and Seventeenth Claims will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e) and service will be made of only the Fourth, Fifth, Sixth, Ninth, Eleventh, Twelfth, Thirteenth, Fourteenth and Fifteenth Claims.

### ORDER

IT HEREBY IS ORDERED, that plaintiff's motion to proceed *in forma pauperis* is granted, and his motion for the appointment of counsel is denied without prejudice;

FURTHER, that the complaint's First, Second, Third, Seventh, Tenth, Sixteenth and Eighteenth Claims are dismissed with prejudice and the Clerk of the Court is directed to terminate defendants Leslie Greathouse, J. Newell, Richard Rich and Eric Kriss as parties to this action;

FURTHER, that plaintiff is granted leave to file an amended complaint regarding <u>only</u> the Eighth and Seventeenth Claims as directed above[7] by **May 20, 2009**;

---

[7]Plaintiff is reminded that he must also <u>include</u> in this amended complaint the Fourth, Fifth, Sixth, Ninth, Eleventh, Twelfth, Thirteenth, Fourteenth and Fifteenth claims against Glenn Goord, Richard Roy, Christopher Moss, J.S. Hover, Joseph Gerace, M. Kirkpatrick, R. Marinaccio, K. Lebel, T. Doyle, and F. Henderson. Because the amended complaint will become the sole complaint in the action, it is the only complaint which will be served on the parties. Failure to include these claims in it means that they will not be preserved for service on the defendants.

FURTHER, that the Clerk of the Court is directed to send to plaintiff with this order a copy of the original complaint, a blank § 1983 complaint form, and the instructions for preparing an amended complaint;

FURTHER, that in the event plaintiff fails to file an amended complaint as directed above by **May 20, 2009**, the Eighth and Seventeenth claims will be dismissed with prejudice without further order of the Court and the Clerk of the Court shall then terminate defendants Ann Doe, Nurse, and Curtis Drown as parties to this action; and

FURTHER, that in the event plaintiff fails to file an amended complaint as directed above by **May 20, 2009**, the Clerk of the Court is directed to cause the United States Marshal to serve copies of the Summons, Complaint, and this Order regarding the Fourth, Fifth, Sixth, Ninth, Eleventh, Twelfth, Thirteenth, Fourteenth and Fifteenth Claims upon defendants Glenn Goord, former DOCS Commissioner; Richard Roy, DOCS, Inspector General; Christopher Moss, Sheriff, Chemung County; J.S. Hover, Deputy Sheriff, Chautauqua County Jail; Joseph Gerace, Sheriff, Chautauqua County; M. Kirkpatrick, Lieutenant, Elmira Correctional Facility; R. Marinaccio, Sergeant, Elmira Correctional Facility; K. Lebel, Correctional Officer, Elmira Correctional Facility; T. Doyle, Correctional Officer, Elmira Correctional Officer; and F. Henderson, Correctional Officer, Elmira Correctional Facility;

23

without plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in plaintiff's favor; and

FURTHER, that, pursuant to 42 U.S.C. § 1997e(g), the defendants are directed to answer the complaint upon service.

**SO ORDERED.**

S/ Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:     March 31, 2009
          Rochester, New York